UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

# FILED

- - - - - - - - - - - - - - -X

2005 SEP 13 A 11: 43

JOHN CIRASUOLO     : Docket No.

          : 3:01 CR 85 (SRU) U.S. DISTRICT COURT

   v.     : 3:05 CV 615 (SRU) BRIDEPORT CONN

          :

          :

UNITED STATES      :

- - - - - - - - - - - - - - - -X

PETITIONER'S REPLY IN FURTHER SUPPORT OF MOTION PURSUANT TO
28 U.S.C. § 2255 TO VACATE AND SET ASIDE SENTENCE

 I. **As Evidenced By The Attached Affidavit Of Counsel,
Counsel Had No Strategic Reason For Failing To Argue
For A Downward Departure Under U.S.S.G. § 4A1.3:   He
Simply Did Not Think Of The Argument**

  When the Court of Appeals granted the Government's

motion and dismissed Mr. Cirasuolo's appeal, it did so

because it was "not certain that the record before us is as

complete as that which may be generated were appellant to

seek collateral review under Section 2255."

  The clear implication of the Court's ruling was that

strategic considerations may have guided counsel that were

not apparent on the record, and, therefore, counsel should

be given an opportunity to be heard. (See, *Greiner v. Wells*

417 F.3d 305 (2d Cir. 2005) (citing, *Sparman v. Edwards*,

154 F.3d 51, 52 (2d Cir. 1998), and *Eze v. Senkowski*, 321

F.3d 110, 136 (2d Cir. 2003)).

  Apparently fearing that it would not get the answer it

wanted, the Government did not contact counsel. Rather,

1

based on the same record that was before the Court of Appeals when it argued for dismissal of the appeal, it argues, "The record shows that the defendant's sentencing counsel made a strategic determination not to pursue a downward departure on the basis of the defendant's criminal history." (Government's Response at 6.) Had the Government actually inquired of counsel, it would have learned, as we did, that strategy did not explain counsel's inaction.

Sentencing counsel Wayne R. Keeney's sworn declaration explaining his conduct is submitted with this reply. Counsel's failure to seek a downward departure pursuant to §4A1.3(b) was not the result of a deliberate strategy. Mr. Keeney just did not think of the argument.

Indeed, as set forth in his declaration and as is apparent from the papers he submitted in connection with sentencing (also attached), Mr. Keeney's strategy was to submit as many grounds as possible for departure in order to also support a "cumulative effect" departure under U.S.S.G. §5K2.0. And so, in fact, rather than being a matter of strategy, the failure to argue that the criminal history category overstated the seriousness of Mr. Cirasuolo's past offenses, and the failure to seek a downward "horizontal" departure under §4A1.3, worked *against* counsel's strategy.

2

The Second Circuit recently reminded in *Greiner v. Wells, supra*, that while "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" (quoting, *Strickland v. Washington*, 466 U.S. 668, 690 (1984)), evidence of counsel's failure to make conscious, reasonably informed decisions for the benefit of the criminal defendant may overcome this presumption of effectiveness. See also, *Pavel v. Hollins*, 261 F.3d 210, 218 (2d Cir. 2001) (defining a strategic decision as a "conscious, reasonably informed decision made by an attorney with an eye to benefiting his client").

Here, any presumption that the failure to argue for a criminal history downward departure reflected Mr. Keeney's exercise of professional judgment is overcome by Mr. Keeney's declaration that he exercised no judgment at all. He simply did not think of the argument even though such downward departure motions were made and expressly approved in this Circuit years before sentencing in this case. See, *United States v. Mishoe*, 241 F.3d 214 (2d Cir. 2001). See also, *United States v. Pinkney*, 551 F.2d 1241 (D.C. Cir. 1976) (at sentencing, defense counsel should present to the court any ground which will assist court in reaching a proper disposition favorable to the accused).

3

Nothing in the record refutes Mr. Keeney's declaration. Yes, counsel filed objections to the Pre-Sentence Report, and, yes, he advanced downward departure motions on other grounds. But effectiveness in one or more aspects of representation does not preclude a finding of ineffectiveness in another. *See Eze v. Senkowski,* 321 F.3d 110, 114 (2d Cir. 2003). Here, counsel's failure to argue for a downward departure based on the criminal history deprived Mr. Cirasuolo of the opportunity to have the court consider the argument and resolve it in his favor.

Mr. Cirasuolo has overcome any presumption in favor of counsel's performance and has satisfied the first prong of the *Strickland* test. In sum, counsel's failure to make the downward departure motion based on an over-statement of criminal history was unreasonable under prevailing professional norms since (a) counsel had no strategic reason for not making the downward departure motion; (b) such motions had made and approved in the Circuit when Mr. Cirasuolo was sentenced; (c) the failure to make the motion deprived Mr. Cirasuolo of the chance to have the court rule favorably on the motion and to depart on this ground; and (d) there was no downside to making the motion.

4

II.  **There Is A Reasonable Probability That, Had The Downward Departure Motion Been Made, A Lower Sentence Would Have Been Imposed**

A "horizontal" downward departure motion based on over-stated criminal history points would have been a strong motion, and, contrary to the Government's view, one cannot be confident that it would have been denied. To the contrary, there is "a reasonable probability" that, had the motion been made, it would have been granted and, accordingly, *Strickland's* prejudice prong is also satisfied. See, *Strickland*, 466 U.S. at 694 (a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome.")

The Government argues that there is no reasonable probability that the motion would have been granted because of the number of prior convictions, and the "escalation in the seriousness of the crimes committed".

Whether there is a reasonable probability that the outcome of the proceeding would have been different must entail more than re-counting the number of prior convictions and the number of points attributed to them in the PSR. It requires an assessment of the circumstances of those prior convictions, and a determination as to whether the sentencing court might have concluded that the cold calculation under the Guidelines put things in a false

light.

In this regard, the Government has completely ignored both the role that Mr. Cirasuolo's history of mental illness played in his criminal history, as well as the staleness of most of the prior offenses, the lack of seriousness of the prior offenses, and the relatively small amount of time Mr. Cirasuolo served as a result of them. It has not countered that the Court would have taken all these factors into account in deciding a departure motion under §4A1.3(b), and the reasonable probability that, after such consideration, the motion would have been granted.

As set forth in more detail at pp. 7-14 of the Brief filed in the Court of Appeals (a copy of which was included with the §2255 motion), 12 of the 17 Criminal History Points (or more than 70% of the total points) were derived from 4 burglary/theft offenses committed between 1982-85. This was not only more than **15** years before the commission of the bank robbery, but also at a time when Mr. Cirasuolo was incontrovertibly suffering from mental illness.

Ordinarily, based on remoteness alone, such aged prior offenses would not even be included in the Criminal History computation. See U.S.S.G. § 4A1.2(e)(1). Here, however, they were, and it was in part due to Mr. Cirasuolo's ongoing mental illness:    partially as a consequence of

6

having been repeatedly declared incompetent to stand trial in the early 1980's, Mr. Cirasuolo was not ultimately sentenced to a period of incarceration on these offenses until 1987 (i.e., within the 15 year period prior to his commission of the bank robbery in 2001). The four matters were all consolidated, and he was sentenced on January 9, 1987, to concurrent terms 5 years. He served about 2 years, and was released on December 29, 1988.

Because a prison term exceeding one year and one month was imposed on each of the 4 burglaries in 1987, 3 criminal history points were added for each pursuant to U.S.S.G. §§4A1.1(a), (e)(1), for a total of 12 criminal history points. (PR ¶¶ 22-25)  The inclusion of all 4 of these offenses in the Presentence Report's Criminal History calculus resulted in a Criminal History Category VI, the most serious category in the Guidelines. Without them, the Criminal History Category would have been III.

There is a "reasonable probability" that this court would have been receptive to the argument that some adjustment in the Criminal History category was warranted. Indeed, when the court imposed the sentence at the lowest end of the guideline range, it explained that it did so because of concern with the deterrence aspect of the calculus. The court specifically stated that the sentence

7

was set at the low end of the Guidelines based on "the relationship [Mr. Cirasuolo had with his] daughter, *but also the fact that [he had] not spent any significant period of time in incarceration before now*." (S. 29; emphasis added)

Consideration of the length of prior incarceration and its relationship to the issue of deterrence is precisely the kind of evaluation the Second Circuit declared appropriate when it discussed the rationale for downward departures under §4A1.3(b) in *United States v. Mishoe,* 241 F.3d at 221:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect. We think the Commission's sensible recognition that a CHC may overrepresent a defendant's likelihood of recidivism

8

> permits a sentencing court, in appropriate cases, to include in its individualized consideration of a section 4A1.3 departure the relationship between the punishment prescribed by a career offender CHC and the degree of punishment imposed for prior offenses. In some circumstances, a large disparity in that relationship might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present "to a degree" not adequately considered by the Commission. *See* 18 U.S.C. § 3553(b).

The *Mishoe* Court also emphasized the need for the "individualized consideration of factors relevant to an assessment of whether" the otherwise applicable criminal history category "significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes."

Here, not only was the period of prior incarceration relatively small for one in Criminal History Category VI, and not only were many of the earlier prior offenses remote, but the priors were also not particularly serious, as indicated by the sentences that were initially handed down: with respect each of the three offenses committed in 1982 and 1983 when Mr. Cirasuolo was 18 years old, the initial sentence was some form of probation.

And though Mr. Cirasuolo committed additional offenses after his release from prison in 1988 and later in his life, these later offenses were also not serious offenses. Indeed, neither the subsequent offenses themselves nor Mr. Cirasuolo's prior history of four burglaries were deemed serious enough by the Florida Court to warrant the imposition of any jail time at all. Yet, when combined with the points he received for the offenses he committed more than a decade later, the early burglaries caused his placement in Criminal History Category VI, the highest category on the criminal history scale.

As for the likelihood of recidivism and the need for an adequate deterrence, yet another factor suggested that a lesser sentence than that called for in the CHC VI guideline range might be expected to have the requisite deterrence. As this court noted at the time it imposed the sentence, this factor was the especially important relationship Mr. Cirasuolo had with his young daughter. The daughter was 10 years old at the time Mr. Cirasuolo was sentenced. Incarceration for 110 months meant she would be an adult by the time he was released. If a lesson was to be learned by incarceration, that lesson could be learned in fewer than 9 years, for Mr. Cirasuolo would surely be

motivated to avoid reincarceration if released while she were still young.

Given the facts that Mr. Cirasuolo had been sentenced to prison only once before (14 years before the commission of the bank robbery) and served for a period of only two years, and given that the pain inflicted by virtue of his removal from his daughter to whom he was unquestionably devoted would serve as an additional deterrent, there is a "reasonable probability" that, had the downward departure motion been made, the court would have taken all this into consideration and concluded that a lesser sentence than 110 months could have the requisite deterrent effect. (Indeed, it appears that the Government came to the same conclusion when, before trial, it offered a plea agreement that set the Criminal History Category at III.)

In sum, neither the length of the prior sentences nor their number when examined in light of the particular circumstances reflected either the seriousness of criminal history of, or the need for adequate deterrence for, a typical Category VI offender. Accordingly, there is a reasonable probability that a "horizontal" departure motion would have been granted.

## Conclusion

Counsel's failure to move for a downward departure deprived Mr. Cirasuolo of his constitutional right to the effective assistance of counsel at sentencing.    He should be resentenced. For this reason, and for the other reasons set forth in the moving papers, the motion to vacate and set aside the sentence should be granted.


Dated: Millbrook, New York
       September 12, 2005

_____
Jane Simkin Smith

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATE OF AMERICA | : | DOCKET NO: 3:01 CR85 (SRU) |
| V. | : | |
| JOHN CIRASUOLO | : | JUNE 1, 2003 |

## MEMORANDUM IN AID OF SENTENCING

Upon review of the Presentence report, the Defendant, John Cirasuolo, by and through his attorney hereby submits the following memorandum:

### Identifying Data:

The Presentence report indicates that the Defendant has no dependents. In fact, the defendant has a ten year old daughter that he raised as a single parent since her birth and subsequent abandonment by her mother. The child was living with the Defendant until the time of the instant offense. The child is now living with his mother and step-father.

### The Offense:

The Defendant was convicted after trial of one count of Bank Robbery in violation of 18 USC ss 3553(b).

### Offense Conduct:

The Defendant entered a bank, approached a teller with a black object tucked in his waistband, demanded and received $7,449.86. At no time was a weapon displayed or the use of a weapon threatened.

**Adjustment for Acceptance of Responsibility:**

The Defendant was directed by former counsel not to provide an Offender's version of the facts.

**Offenders Version of Facts.**

The Defendant does not deny his participation in the offense. After long years of suffering a variety of mental illnesses, he was stabilized and well functioning through the use of psychotropic drugs. He had custody of his daughter and was living in a one bedroom apartment. His anxiety level was significantly raised when he was visited by DCF who directed that he would be unable to keep custody of his child unless the living arrangements included two bedrooms. Certainly, a person of normal mental health would be able to handle this demand. The Defendant, however, recovering from among other problems panic attacks was so stressed that it upset his prescription drug regimen resulting in a relapse into his long term mental health problems. His diagnosis has included at various times: bi-polar disorder, panic disorder, paranoia and delusional disorder with auditory hallucinations.

The Defendant was compelled to commit the instant offense through auditory hallucinations in which he was directed to act by his father's voice. ( It is clear even to the layman reviewing the Defendant's personal and psychological history that he was significantly physically and psychological abuse by his father.)

The Defendant has no history nor any disposition toward violence  The Defendant is adamant that he did not possess a handgun or any other weapon during this offense.

**Victim Impact:**

The victim appears to have suffered no long term effects from her ordeal.

**Offense Level Computation:**

Base Offense Level:                Robbery                    20

Specific Offense Characteristic:

The Presentence Report suggests that a 2 level increase is warranted because the property
of a financial institution was taken. The Defendant urges the Court to consider that it is a
far more serious offense to rob an individual than a faceless corporate entity which has
suffered no significant economic impact by the instant offense. Absent any aggravating
factor such as causing finacial collapse or signicant ecomonic hardship to the corporate
entity, the Defendant urges the Court to disregard the suggestion of the Presentece
Report.

Specific Offense Characteristic:

The Presentence Report suggests a 5 level increase because the Defendant
"brandished" a firearm.

Brandishing is defined: 1) to shake or wave (as a weapon); 2) to exhibit in an
ostentatious or aggressive manner.

The evidence in the instant case indicates the presence of a black object in the
Defendant's waistband. It is not alleged that he displayed a gun or threatened the use of a
gun. The Defendant believes that adjustment suggested by the Presentence Report is
inapplicable to this set of facts.

**Adjustment for Acceptance of Responsibility:**

Exhibit "2" a copy of the notes of the Psychiatrist, Hillell Glover,M.D. who makes no reference to "malingering" in his diagnosis.

It is clear when properly medicated with psychotropic drugs, the Defendant is a fully functioning adult. Absent the medication, he relapses into his lifelong psychological problems. His history of psychological problems and treatment is so extensive that it is a clear indication that he was likely suffering some or all of the problems diagnosed in his past at the time of the offense which diminished his capacity to understand the wrongfulness of his conduct.

The Court is well aware of the relatively low standard do determine a Defendant's competency to stand trial. The fact that this Defendant has been found not competent to stand trial several times in the past belies any suggestion that he is a malingerer or has exaggerated his mental problems in any way.

**Factors That May Warrant Departures:**

The Defendant requests that the Court consider departing from the Sentencing Guidelines based upon the following factors:

1. The offense was committed while the Defendant was suffering a post-traumatic stress disorder which diminished his capacity to understand the wrongfulness of his actions. United States v. Cantu, 12 F. 3d 1506 (9th Cir. 1993).

2. The offense was committed while the Defendant was suffering mental and emotional disorders including panic disorder, PTSD, Bipolar disorder, auditory delusions, depression and paranoia which may fall short of a full defense of mental defect or disease yet diminished his capacity to understand the wrongfulness of his

The Defendant has requested through recently appointed counsel that he be allowed to provide an Offenders Statement. When given the opportunity through recently appointed counsel he has provided a summary of the events which preceded and included the offense committed. He has been forthright in admitting his participation in the offense and should not be penalized for exercising his Constitutional right to trial or for failing to provide a statement for the Presentence report when so directed by previous counsel. The Defendant's handwritten statement is attached hereto as Exhibit "1". The Defendant requests that the Court consider a downward adjustment of 2 points for acceptance of responsibility bringing the Total Offense Level to: 18.

**Defendant's Criminal History:**

The Presentence Report accurately computes his Criminal History Category to be VI. The Defendant states in mitigation that the crimes delineated were committed at times when he was not medicated.

**Defendants Personal History:**

The Defendant agrees with the summary of his personal and family data. He asks to correct one matter in that he has lost touch in the last few years with only his brother but is in touch with the other members of his family particularly his mother and step-father who care for his daughter.

**Physical Health:**

The Defendant suffers chronic epileptic seizures.

**Mental and Emotional Health:**

The Court is in receipt of a Psychological Report which outlines the history and prognosis of the Defendant's mental health issues. The Defendant attaches hereto as

actions. United States v. Garza-Juarez, 992 F. 2d 896 (9th Cir, 1993); UnitedStates v. Lauzon, 938 F. 2d 326 (1st Cir. 1991); United States v. Glick, 946 F. 2d 335 (4th Cir. 1991).

3. The Defendant has a tragic personal history including physical, psychological and sexual abuse at the hands of his uncle, father and step-father as well as inmates and staff of institutions in which he has been confined. United States v. Lopez, 938 F. 2d 1293 (D.C. Cir. 1991); United States v. Deigert, 916 F. 2d 916 (4th Cir. 1990). See attached Exhibits 3 & 4: Letters of Stephen J. Szabo, MD.

4. The Defendant although struggling through the complications of lifelong mental problems was able to seek and receive sole custody of his child. He provided and maintained a stable home for the child. The child was apparently healthy both emotionally and physically under his care. The child has been placed in the care of his elderly mother and step-father after an extended period of time in foster care. The Defendant maintains a close relationship with the child by mail and telephone. Should an extended period of incarceration be imposed by the Court coupled with the age and health of Defendant's parents, it is likely that the child would become subject to a foster care once again potentially producing a negative impact on the child's mental health. The Defendant asks the Court to consider his extraordinary parental responsibilities and family circumstances in determining his sentence. United States v. Rivera, 994 F. 2d 942 (1st Cir. 1993); United States v. Sciamo, 997 F. 2d 970 (1st Cir. 1993); United States v. Johnson, 964 F. 2d 124 (2d Cir. 1992).

5. Although the Defendant believes that individually the factors which warrant departure listed herein would be sufficient for the Court to depart from the Sentencing

Guidlelines, the cumulative effect of these factors shouilfd be considered as a basis for departure under setion 5K2.0. <u>Koon v. US.</u> 518 US 81 (1996).

**Sentencing Options:**

The Defendant urges the Court to depart from the Sentencing Guidelines based upon one or all of the factors contained herein and fashion a sentence of a period of incarceration followed by intensive supervision by the Department of Probation. A condition should be imposed that he be closely monitored to assure that he is continually under the care of a psychiatrist and continually medicated with the appropriate prescribed psychotropic drugs. Under those conditions, the Defendant could seek and maintain full time employment and provide restitution to the victim.

In the alternative, the Defendant requests that the Court adopt the Defendant's calculation of Offense level 18 and sentence in the low range of 57 to 71 months.

The Defendant requests through his attorney that the Court commend the Probation Officer on the thoroughness, fairness and objectivity that he brought to the summary of the Defendant's personal and psychological history.

Respectfully submitted,

THE DEFENDANT

by _____
Wayne R. Keeney, Esq.
1187 Broad Street # B
Bridgeport, CT 06604
(203) 335-2080

THE HONORABLE JUDGE UNDERHILL

I JUST WANT TO TAKE THIS OPPRTUNITY TO EXPLAIN
TO YOU THE EVENTS LEADING UP TO MY CRIME.
WITH THE HOPE THAT YOU CAN BETTER UNDERSTAND
THE CIRCUMSTANCES AS THEY TOOK PLACE.
I WAS VOLUNTARLY RECIEVING PSYCHIATRIC TREATMENT
AT A PLACES CALLED BRIDGES ALSO KNOWN AS
MILFORD MENTAL HEALTH CENTER. I MISSED AN
APPOINTMENT DUE TO A SNOW STORM. THUS WAS
OFF MY MEDS FOR OVER TWO WEEKS.
ON TOP OF THIS I HAD PHENMONIA AND WENT
TO THE EMERGENCY ROOM. AT WHICH TIME
I WAS INVOLVED IN A ARGUMENT WITH MY
NURSE. BECAUSE SHE WOULD NOT GET MY DOCTOR
FOR ME. I WAS DISCHARGED SHORTLY AFTER.
THIS NURSE FILED A COMPLAINT AGAINST ME
WITH THE DEPERTMENT OF CHILDREN AND FAMILIES.
WHEN THE WORKER CAME TO MY APARTMENT HE
EXPLAINED TO ME THAT MY HOUSING WAS TOO
SMALL AND I NEEDED TO MOVE. THIS WAS
A PROBLEM BECAUSE I DIDN'T HAVE THE MONEY
TO MOVE. AND WAS SCARED OF LOSING MY
DAUGHTER. LOOKING BACK I CAN SEE HOW I
WAS FALLING INTO A DEPRESSIVE STATE AND WAS
SUFFERING FROM HELLUSINATIONS. IN THE FORM OF
MY DECEST FATHERS SPIRIT TELLING ME TO DO
THINGS SUCH AS ROBBING THE BANK.

EXIBIT    1

On the day of the crime. I drove to Peoples Bank though I have no memory of this. I'm told I waited in line for twenty eight minutes. What I do remember is reaching out and trying to stop myself from far away but was unable to do so. from that point on my memory is a total lose. ~~strikethrough~~ However there is one thing that I am positively sure of and that is I did not have a gun or access to one. I have suffered from psycological problems my entire life including hellusanations.

**(203) 335-0607**
**Federal Bar # 16525**

This is to certify that a copy of the above has been forwarded by US Mail to the Clerk of the Court and the Office of the United States Attorney this date.

_____
Wayne R. Keeney, Esq.